IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON JAYNE,

    Petitioner,

vs.

DIRECTOR, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,[1]

    Respondent.

No. CIV S 06-1002 LKK KJM P

<u>ORDER AND</u>

<u>FINDINGS AND RECOMMENDATIONS</u>

/

    Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus. He challenges his 2001 Shasta County convictions for resisting a police officer in violation of California Penal Code § 69 and vandalism in violation of California Penal Code § 594 (B)(1) following his plea of nolo contendre. Respondent has filed a motion to dismiss, alleging that the action was filed beyond the AEDPA statute of limitations.

/////

/////

---

[1] Petitioner originally named the Director of the Department of Corrections and Rehabilitation as respondent. When respondent filed the motion to dismiss, petitioner had paroled, so respondent asked the court to substitute the unit supervisor of the local parole office as respondent. It now appears that petitioner has been returned to custody.

1    The instant petition was filed May 8, 2006, raising two grounds: (1) the
2 prosecution's failure to disclose exculpatory evidence, and (2) the vandalism conviction was
3 improper because petitioner was never held to answer on the charge.
4    On December 4, 2006, this court recommended that the second claim be
5 dismissed; the district court followed this recommendation in an order filed January 26, 2007.
6    Respondent filed this motion to dismiss on February 20, 2007; petitioner did not
7 file an opposition within the time set by the local rules.  On July 13, 2007, this court issued an
8 order to show cause, directing petitioner to show cause why the motion should not be granted.
9 On August 8, 2007, petitioner filed a single page, asking that the court appoint counsel and direct
10 High Desert State Prison to grant his access to the law library.  He also asked that the court
11 release him immediately because of the non-disclosure of material evidence and argued that his
12 innocence should excuse any procedural problems in the litigation.

I. Background

    A.  Actions Challenging This Conviction

15    Petitioner was convicted on August 17, 2001, but did not appeal his conviction.
16 Lodged Documents (Docs.) 1 & 2.  However, on April 29, 2002, petitioner sent a notice of
17 appeal to Shasta County Superior Court; on May 1, 2002, the court wrote to petitioner, notifying
18 him that it had not filed the notice of appeal because it was late.  Doc. 2.
19    On August 10, 2002, petitioner mailed an application for relief from default and
20 for permission to file a belated appeal to the Court of Appeal for the Third Appellate District.
21 Doc. 3.  He suggested that the ground for the appeal would be a challenge to his request for
22 immediate sentencing, which he made in the mistaken belief that he was not eligible for
23 probation.  Id. at 1.  The court denied the request on October 17, 2002.  Doc. 4.
24 ////
25 /////
26 /////

On June 9, 2003, petitioner filed a habeas petition, dated May 29, 2003, in Shasta County Superior Court (Case No. 03HB4385). It appears[2] that the ground for the petition was undisclosed Brady material, for petitioner explains his delay in bringing the petition as, "I did not find out this new evidence until it was provided by the Sheriff's office." Doc. 5 at 6. This petition was denied by an order dated June 13, 2003. Doc. 6.

Petitioner filed a federal habeas action on June 12, 2003; it was dismissed on October 17, 2003 at petitioner's request. Doc. 18 (docket for Jayne v. Castro, Civ. No. 03-1254 FCD GGH P) & Doc. 19.

Petitioner's next step was a petition dated September 9, 2003 and filed in the California Supreme Court on September 22, 2003 (Case No. S119172). He again alleged that he was not given statements from eye witnesses that contradicted the accounts of the offense given by sheriff's deputies. Doc. 7 at 3. This petition was denied on February 4, 2004. Doc. 8.

Petitioner returned to Shasta County Superior Court on January 3, 2006, alleging that during the trial of his civil rights action in the Eastern District of California, Deputy Hughes testified that petitioner's vehicle had not moved during the scuffle that led to the charges against petitioner and that this contradicted testimony from Hughes and Berg during the preliminary hearing. He also alleged that two eyewitnesses had not seen the vehicle move, all of which would have undercut the evidence supporting the charged counts of assault on an officer in violation of California Penal Code § 245. Doc. 9 (Case No. 06HB210). This petition was summarily denied on January 17, 2006. Doc. 10.

Before he received the decision from the Superior Court, petitioner prepared a petition, dated January 10 and filed January 18, 2006, raising a similar challenge to his conviction, which he filed in the California Supreme Court. Doc. 11 (Case No. S140428). This petition was denied on March 15, 2006. Doc. 12.

---

[2] The document lodged by respondent includes only three of the six pages of the California Judicial Council habeas form.

3

Petitioner returned again to Shasta County Superior Court on January 30, 2006 (Case No. 06HB701), again alleging that favorable material had been withheld; that he was given a copy of the Internal Affairs report with accounts from eyewitnesses as part of the discovery process in his civil rights action, Jayne v. Pope, Civ. No. 02-0418 WBS JFM P (E.D. Cal.); the two witnesses did not report seeing his car move; in addition, during the trial, Deputy Heath testified that petitioner's car had not moved or dragged him. Doc. 13 at 4-5. Petitioner argued that this testimony contradicted Heath's testimony at the preliminary hearing. Id. at 5. He also argued that this information shows that he was not guilty of the two charges of assault on an officer and, had he had this information during the plea negotiation process, he would not have pled guilty to the felony vandalism and resisting arrest charges. Id. at 6. This petition was denied on February 9, 2006. Doc. 14.

Petitioner then filed a habeas action in the Court of Appeal on March 15, 2006, again raising the undisclosed evidence and contradictory testimony. Doc. 15 (Case No. C052089). The court issued two denials, one on March 23, and one on March 29, 2006. Docs. 16 & 17.

B. Other Actions

Sometime in 2002, petitioner filed a habeas petition in Lassen County Superior Court, challenging the result of disciplinary proceedings at the California Correctional Center; this petition was denied on December 3, 2002. Doc. 21. He pursued this challenge in the California Supreme Court, which denied the petition on June 18, 2003. Docs. 22 & 23.

Petitioner was paroled on June 5, 2004. Doc. 38 at 1a. He was returned to prison again in March 2005, and again paroled on June 10, 2005. Id. at 1a, 1b. He was arrested in October 2005, and a revocation hearing was held on December 5, 2005. Id.; Doc. 39.

Petitioner challenged a deprivation of good time credits in a writ filed December 27, 2005 in San Joaquin County Superior Court. Doc. 24. On December 28, 2005, he filed another petition in San Joaquin County Superior Court, alleging that his parole revocation

proceedings had not been conducted properly. Doc. 27. On January 31, 2006, these two writs were transferred to Shasta County Superior Court; both were denied on February 9, 2006. Docs. 25 & 26.

While he was litigating the parole revocation in Superior Court, petitioner filed a petition in the California Supreme Court on January 24, 2006, challenging the revocation and the calculation of his good time credits. Doc. 28 (Case No. S140593). This petition was denied on March 15, 2006. Doc. 29.

Petitioner filed yet another petition in San Joaquin County Superior Court on February 7, 2006, again challenging the calculation of his good time credits. Doc. 30 (Case No. SF98416A). This, too, was transferred to Shasta County Superior Court, where it was denied on April 4, 2006. Docs. 31 & 32.

Petitioner pursued his attack on the parole revocation proceedings in the Court of Appeal, in an action filed March 7, 2006; this was denied on March 9, 2006. Docs. 33 & 34 (Case No. C052060).

Around the same time, he filed the same essential petition in Shasta County Superior Court; this was denied on March 17, 2006. Docs. 35 & 36 (Case No. 06HB1696).

II. The Statute Of Limitations Under The AEDPA

One of the changes the Antiterrorism and Effective Death Penalty Act (AEDPA) made to the habeas statutes was to add a statute of limitations for filing a habeas petition:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

5

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

    Because petitioner did not appeal his conviction, it was final for purposes of the AEDPA statute of limitations at the expiration of the sixty day period for filing his appeal, October 16, 2001.  Lewis v. Mitchell, 173 F.Supp.2d 1057, 1060 (C.D. Cal. 2001); Cal. Rules of Court, rule 31(d).  Accordingly, the statute of limitations began to run on October 17, 2001 and would have expired on October 17, 2002, absent any tolling.  Fed. R. Civ. P. 6(a) (excluding the day from which the period begins to run from the calculation of the time).

    A.  Statutory Tolling Following The Entry Of Judgment

    The statute of limitations is tolled during the pendency of any "properly filed" state collateral attack on the judgment.  Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999).  In this case, petitioner's first attempt to challenge his conviction came on April 29, 2002, when he submitted a notice of appeal to Shasta County Superior Court.  Respondent argues that this did not toll the statute of limitations because it was not properly filed.

    In Duncan v. Walker, the Supreme Court recognized "the tolling provision applies to all types of state collateral review available after a conviction and not just to those denominated 'post-conviction' in the parlance of a particular jurisdiction."  533 U.S. 167, 177 (2001).  "So long as the state collateral petition . . . attacks the pertinent judgment," it may toll

/////

/////

the AEDPA statute. Tillema v. Long, 253 F.3d 494, 500 (9th Cir. 2001); Lewis, 173 F. Supp. 2d at 1060-61 (motion to modify sentence tolled the statute of limitations).

The other threshold requirement for tolling is that the action be properly filed. In Artuz v. Bennett, 531 U.S. 4 (2000), the Supreme Court noted that a petition is filed "when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Id. at 8. The court determined that such a petition is "properly filed" for § 2244(d)(2) purposes

> when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Id. (footnote omitted). Under this understanding of what is "properly filed," the notice of appeal does not serve to toll the statute of limitations because it was late and therefore was never filed. Cal. Rules of Court, Rule 31(d); Artuz, 531 U.S. at 8.

Respondent concedes that petitioner's next action, the motion for relief from default filed in the Court of Appeal, tolled the statute of limitations from August 10, 2002,[3] the date it was mailed, until October 17, 2002, the day it was denied, a period of sixty-eight days. Accordingly, absent additional tolling, the statute of limitations would have expired on December 24, 2002.

In Carey v. Saffold, 536 U.S. 214, 218-21 (2002), the Supreme Court held that the AEDPA statute of limitations is tolled not only between the actual filing and decision on a writ, but also during those periods between filings as a petitioner works his or her way "up the ladder"

---

[3] Based on the prison mailbox rule of Houston v. Lack, 487 U.S. 266, 276 (1988), a document is filed when it is given to prison authorities for mailing. Patterson v. Stewart, 251 F.3d 1243, 1245 n.2 (9th Cir. 2001). One Court of Appeals has held that in the absence of contrary evidence, it would assume that the document was delivered for mailing on the date it was signed. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); but see Price v. Philpot, 420 F.3d 1158, 1165 (10th Cir. 2005) (inmate can establish date he delivered pleading to authorities by showing when it was logged into the prison mail system or by submitting a declaration or notarized statement setting forth the date of delivery to officials).

7

1  through higher courts to complete "one full round" of state court review of claims, so long as
2  there was not undue delay between the denial of one petition and the filing of another. Id. at 217,
3  219-20; Welch v. Newland, 267 F.3d 1013, 1016 (9th Cir. 2001) ("tolled period includes
4  intervals between the disposition of a state court petition and the filing of a subsequent petition at
5  the next state appellate level"); Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (stating
6  that the "AEDPA's one-year grace period is tolled during the pendency of properly filed state
7  petitions challenging the judgment or claim at issue."); Biggs v. Duncan, 339 F.3d 1045, 1048
8  (9th Cir. 2003) (no undue delay).

In Welch v. Carey, 350 F.3d 1079, 1083-84 (9th Cir. 2003), the Court of Appeals found the petitioner was not entitled to tolling between the filing of one petition in the California Supreme Court and the filing of a second such petition, some four years later, which raised different grounds. The court found that Welch was not entitled to tolling during this gap, in part because the gap was too great, and in part because by raising different grounds in the second petition, he had abandoned his earlier claims, which were accordingly no longer "pending."

In this case, petitioner did not proceed "up the ladder" after his application for relief from default was denied in the state Court of Appeal, but instead filed a habeas petition in the Superior Court. Moreover, the issue he sought to raise on appeal, relating to the denial of probation, is not the issue he raised in the Superior Court, relating to the suppression of exculpatory evidence. On these grounds, petitioner is not entitled to tolling.

Moreover, even if the Superior Court petition could somehow be deemed to be related to the motion in the Court of Appeal, the gap between the two filings was too great. In Evans v. Chavis, 546 U.S. 189, 126 S.Ct. 846, 852 (2006), the United States Supreme Court directed the federal courts to determine whether a "gap" petition was delayed unreasonably, even when a state court did not deny the petition as untimely. The Court suggested that a gap longer than the thirty to sixty days permitted in states with written rules for filing might be reasonable, while six months would not be. Id. at 854. In this case, the gap between the denial of the motion

8

for relief from default on October 17, 2002 and the first Superior Court petition on May 29, 2003[4] was 224 days, or seven months and twelve days, outside the six month limit for reasonableness established by the Supreme Court.

Finally, the actions filed in the Lassen County Superior Court and the California Supreme Court in 2002 and 2003, respectively, do not toll the statute of limitations because they deal not with the Shasta County conviction, but with the results of a prison disciplinary proceeding; only collateral attacks on the "pertinent judgment or claim" serve to toll the statute of limitations. 28 U.S.C. § 2244(d) (2).

B. Statutory Tolling Following The Discovery Of The Brady Material And The Alleged Recanting Testimony

Although petitioner does not make this argument explicitly, the fact that he is raising both a Brady and a newly discovered evidence claim in his petition suggests that the statute of limitations may be governed by § 2244 (d)(1)(B) or (D), which start the AEDPA clock from the date a state-created impediment is removed or from the date when petitioner knew or reasonably should have known of the basis of the claim. Even if these provisions apply to the alleged Brady material, the instant petition still is not timely.

1. Brady Material

Although there is some question whether the prosecution's failure to disclose Brady material is a state created impediment under § 2244(d)(1)(B) or allows the "knew or should have known" provisions of § 2244(d)(1)(D) to restart the AEDPA statute of limitations, neither helps petitioner in this case. Wood v. Spencer, 487 F.3d 1, 6-7 (1st Cir. 2007).

In his state petitions and in this court, petitioner alleges that he received the allegedly exculpatory internal affairs report during the discovery proceedings in Jayne v. Pope. See, e.g., Doc. 13 at 4-5. The discovery deadline in that case was March 3, 2003. See Case Civ.

---

[4] The court will use the date the petition was signed.

No. 02-0418 WBS JFM (E.D. Cal.), Docket No. 26 (Scheduling Order).[5] Petitioner included a copy of the internal affairs report as an exhibit to his opposition to the defendants' motion for summary judgment. Id., Docket No. 60. Because petitioner alleges that he received the documents during discovery, the court deems the state created impediment to have been removed on March 3, 2003, and deems that the date when petitioner knew or should have known about the basis of the claim. Accordingly, the statute of limitations for the Brady claim began to run on March 4, 2003 and would have expired on March 4, 2004, absent any tolling.

As noted, petitioner did file a petition dated May 29, 2003 in the Superior Court; it was denied on June 13, 2003. He pursued his state remedies with a petition in the Supreme Court, dated September 9, 2003; it was denied on February 4, 2004.[6] Assuming that the matter was pending during the gap between the two petitions, a period of 251 days elapsed. This extended the statute of limitations on the Brady claim until November 10, 2004. The later state petitions raising the Brady claim, filed January 3, 2006 and thereafter, did not revive the statute of limitations. Vroman v. Brigano, 346 F.3d 598, 601-02 (6th Cir. 2003).

The instant petition, filed May 8, 2006, is untimely as to the Brady claim.

2. Hughes' Testimony

On March 2, 2005, Heath Hughes testified in the federal civil rights action Jayne v. Castro. See Case Civ. No. 02-0418 WBS JFM P (E.D. Cal.), Docket No. 129 (transcript of Hughes' testimony). Accordingly, petitioner knew of the basis of this claim on March 2, 2005 and the statute of limitations began to run on March 3, 2005, expiring on March 3, 2006, absent any tolling. Fed. R. Civ. P. 6(a).

/////

---

[5] The court may take judicial notice of its own records. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of court records in another case).

[6] The federal petition, filed while his Superior Court petition was pending, did not toll the statute of limitations. Duncan v. Walker, 533 U.S. at 181-82.

Petitioner's initial state collateral attack containing this claim was filed on January 3, 2006, but was "summarily denied" on January 17, 2006, in part because it was not properly executed. Docs. 9 & 10. Accordingly, this petition was not properly filed and did not toll the statute of limitations. Artuz, 531 U.S. at 8.

Petitioner's next petition, dated January 24, 2006 and filed January 30, 2006, was denied as untimely on February 9, 2006. Docs. 13 & 14. This also did not toll the statute of limitations: an untimely state court application for collateral relief will not provide a basis for tolling under 28 U.S.C. § 2244(d)(2) because such applications are not "properly filed." Pace v. DiGuglielmo, 544 U.S. 408, 414-15 (2005). "Under Pace, if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled." Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005), as amended on denial of rehearing, 439 F.3d 993 (9th Cir. 2006).

However, the petition dated January 10, 2006 and filed in the California Supreme Court on January 18, 2006, was not denied on timeliness grounds in the order dated March 15, 2006. Docs. 11 & 12. Accordingly, the statute of limitations on the recantation claim was tolled for a period of sixty-four days and thus expired on May 6, 2006. The instant petition, filed May 8 but executed May 2, 2006 was therefore timely as to this claim.

Nevertheless, this claim does not provide a petitioner with a basis for relief. As part of the summary judgment proceedings in Jayne v. Pope, petitioner submitted a copy of the transcript of his preliminary hearing. See Case Civ. No. 02-0418 WBS JFM P (E.D. Cal.), Docket No. 60 (Opp'n, Ex. E). At the hearing, Deputy Hughes described the incident with petitioner:

> Q. Okay. Now, was the defendant able to get the vehicle to move at any point?
>
> A. Yes, he was. After he got it started and I was trying to pull him out of the vehicle, he had put it in gear and the vehicle moved forward, I would say no more than probably a couple feet.

11

1  Q. And now, at the point that the vehicle started moving forward, were you holding on to him? Where were you exactly?

2

3  A. At that time I had moved around behind him with my right hand and was trying to – to pull him out by the trunk of his body. And I was in between him and the seat of the vehicle and when the truck lunged forward, I was pinned between him and the – the driver's seat.

4

5  Q: So, were you pulled along with the vehicle?

6  A. Yes, I was.

7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9  A. At that point, Deputy Berg was – was trying to help me pull him out of the vehicle and he had put it up into reverse, the gear lever, and then the vehicle moved backwards.

10

11  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12  Q: Okay. And what was the defendant doing as Deputy Berg was reaching in and – moving the gear shift?

13

14  A. He was attempting . . . to strike at us and I recall, with his right hand he was trying to – to manipulate the gear lever.

15  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

16  Q. . . . .What was going on with the engine . . . as this was going on? Could you hear anything?

17

18  A. At this point, Deputy – Deputy Berg had gotten the gear lever into park. So, the vehicle was in park and then Mr. Jayne had accelerated the vehicle with the gas pedal at a very high rate. It was very loud, very high rpm's.

19

20  Q. At some point, was Deputy Berg able to shut the engine off?

21  A. Yes, he was.

22  Id. at 9-12.

23  At trial, petitioner's counsel elicited the following testimony from Deputy

24  Hughes:

25  Q: At the time you were attempting to extract Mr. Jayne from his . . . Blazer, did you observe Mr. Berg's hands on the gear shift lever?

26

12

> A. Yes, I did.
>
> Q. And after Mr. Berg's hands were on the gear shift lever, did the vehicle move?
>
> A. I don't believe it moved after he got it into park.

Docket No. 129 (Testimony of Heath Hughes at 25).

A conviction violates the Fourteenth Amendment if it is obtained by the use of perjured testimony the prosecutor knows to be false. Napue v. Illinois, 360 U.S. 264 (1959). It is petitioner's burden to demonstrate that the challenged testimony was false, that the false testimony was material, and that the prosecutor knew the testimony was false when it was presented. Chambers v. Johnson, 218 F.3d 360, 363-64 (5th Cir. 2000). A witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Not every discrepancy in testimony translates into perjury. Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004), cert. denied, 544 U.S. 1063 (2005).

Petitioner has not borne his burden of demonstrating that Hughes' testimony at his preliminary hearing was false or material. The testimony at the civil trial creates only a potential ambiguity, for Hughes was not asked directly whether the Blazer moved at anytime; his answer addresses only the time after Deputy Berg, not petitioner, gained control of the gear shift lever. Moreover, petitioner did not plead guilty to these charges, but rather to vandalism and resisting arrest, convictions that were are not at issue in the one claim remaining in this petition.

C. Actual Innocence

Petitioner argues that any failure to meet the statute of limitations may be excused because he is actually innocent. This court need not consider whether petitioner's claim that he is innocent of charges, which are not challenged in this petition, has any impact on the statute of limitations, because petitioner has not met the standard for showing actual innocence.

/////

In Schlup v. Delo, 513 U.S. 298, 314-15 (1995), the Supreme Court held that a habeas petitioner who makes "a colorable showing of actual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s]" considered on the merits. The Ninth Circuit has suggested that a sufficient Schlup showing might overcome the bar of the statute of limitations. Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002). Ultimately, it is petitioner's burden to demonstrate actual innocence. Jaramillo v. Stewart, 340 F.3d 877, 883 (9th Cir. 2003).

As noted above, Hughes' testimony at federal trial in the case of Jayne v. Pope does not establish petitioner's innocence. His other evidence, the statements of Jackie Shelton, a cashier at the truck stop where the incident occurred, and John Pigg, another truck stop worker, similarly fall short.

Shelton told internal affairs officers that after petitioner had taken some items without paying, she contacted the deputies, who were having lunch. As the deputies asked petitioner to stop, he ran for his Blazer and started the engine. One of the deputies stood on the running board and tried to prevent petitioner from getting the Blazer into gear. Shelton said that the engine revved really high and "if the young man happened to get the Blazer into gear, John would be dead, as the Blazer was pointed right towards the front door where John was standing." Jayne v. Pope, Civ. No. S-02-0418, Docket No. 60 (Opp'n to Mot. for Summ. J., Ex. 4 (3/20/01 interview with Jackie Shelton)). The implication of Shelton's statement is that the Blazer did not move, but the ambiguous statement does not present a colorable claim of innocence.

According to John Pigg, when he went outside, the deputies confronted petitioner at the Blazer after petitioner had started the engine, which was racing. The deputies were "struggling with the guy" and "finally got the guy under control" even though "the guy was wrestling, swinging, and fighting the deputies." Pigg does not mention the Blazer moving, but neither does he claim that the Blazer remained stationary. Instead, he describes petitioner's

/////

continual struggle against the deputies' attempts to arrest him.  Id. (3/27/01 interview with John Pigg).  Once again, this ambiguous statement falls short of showing petitioner's innocence.

III.  Other Motions

In light of this determination, petitioner's requests for the appointment of counsel, for an order directing access to the law library, and for immediate release are denied.

IT IS HEREBY ORDERED that the August 8, 2007 motions for appointment of counsel, access to the law library, and immediate release are denied.

IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss be granted as to the Brady claim but denied as to the claim that Hughes contradicted his earlier testimony; however,

2. The petition be denied insofar as petitioner alleges that Hughes' testimony in the civil rights action contradicted his testimony at petitioner's preliminary hearing; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 29, 2007.

_____
U.S. MAGISTRATE JUDGE

2

jayn1002.157